## Malone v. Pittsburgh & Lake Erie R. R., Appellant.

*Railroads—Passengers—Expulsion from train—Position of doubt—Contributory negligence.*

Where one is put in a position of embarrassment and difficulty by the negligence of a railroad company, he is not bound to use the best judgment, but only good faith and reasonable prudence.

A woman was wrongfully ejected from a train upon which she was a passenger, at a regular stopping place where there was no station house, but only a box car used temporarily as a station. A storm was approaching but she was not informed that she could find shelter in the box car, nor did she know that she would have been permitted to take the next train. She started to walk back to the station from which she had started, and on the way was overtaken by a heavy rain storm, and suffered in health therefrom. *Held,* that it was proper to leave the whole case to the

jury, as the court could not say as a matter of law that plaintiff's conduct under the circumstances was improper and negligent.

*Damages—Evidence—Loss of earning power.*

Where a boarding house keeper is injured by the negligent conduct of another, it is proper to permit her to show that on account of the disability caused by the injury she had been deprived of carrying on her business of keeping a boarding house. Such evidence is not an effort to show loss of profits, but loss of earning power in her business or occupation.

Argued Nov. 10, 1892. Appeal, No. 101, Oct. T., 1892, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1891, No. 134, on verdict for plaintiff, Mrs. E. P. Malone. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for personal injuries by negligence of defendant.

At the trial, before McCLUNG, J., it appeared that, on June 17, 1890, plaintiff and Lizzie Huchel bought tickets from Pittsburgh to Aliquippa station and return. On the return from Aliquippa, according to plaintiff's testimony, the conductor refused to take the tickets, saying they were not good on his train, and put plaintiff and her companion off at Shannopin. The conductor on the other hand testified that plaintiff asked for a stop-over check, and upon his refusal to give it, she refused to give up her ticket, and that he thereupon required her to leave the train.

The facts as to the conduct of plaintiff after she was ejected appear by the opinion of the Supreme Court.

When plaintiff was on the stand she was asked this question: " Q. In addition to the sickness you have described, just state how it has affected you in regard to the charge of your boarding house." Objected to.

Plaintiff's counsel proposed to prove that through her sickness and disability she has been deprived of carrying on her business and household duties.

Objected to that it can only have one purpose, that plaintiff is attempting to prove loss of profits in the boarding house. Objection overruled and exception. [6]

Plaintiff testified that she had not been able to do any work since the accident.

Defendant's points were as follows:

" 1. That under the testimony in the case the verdict must be for the defendant." Refused. [1]

" 2. That if the jury believe that the plaintiff was put off at Shannopin, a regular station of the railroad, and where the train upon which she came to Nimicks stopped, and where she could have gotten on the train, no damages may be allowed for anything that happened after she left Shannopin to go to Aliquippa, or for the results of anything that happened after she left Shannopin." Refused. [2]

" 3. That if the jury believe that the plaintiff was put off the cars at Shannopin, a regular station of the railroad, without any rudeness or discourtesy, then the measure of the damages is actual compensation for loss of time while waiting for the next train, which in this case is nominal." Refused. [3]

" 4. If the court refuses to affirm the third point, that if the jury believe that the plaintiff was put off at Shannopin, a regular station of the railroad, where she could have gotten on the train upon which she afterwards came to Chartiers, then the measure of the damages is actual compensation for the time which would be lost waiting at Shannopin, and a reasonable compensation for any humiliation or mortification that there may have been in the case. *Answer :* This point ignores the fact of the knowledge of the plaintiff that she was at such station, and with such facilities as are described, and possibly other material facts, and is therefore refused." [4]

" 5. That the defendant can only be held liable for results as under the circumstances of the case might and ought to have been foreseen by the conductor could result from the plaintiff getting off the train ; and that the plaintiff would get caught in a rain on her way back to Aliquippa, was not such a result as could be foreseen by the conductor. *Answer :* Refused. The general principle is correctly stated, but its application is for the jury." [5]

Verdict and judgment for plaintiff for $700. Defendant appealed.

*Errors assigned* were (1–5) instructions, quoting them; and (6) rulings on evidence, quoting bill of exceptions and evidence.

*Edwin W. Smith, Knox & Reed* with him, for appellant.— The injuries to plaintiff were not the proximate result of defendant's conduct: West Mahanoy Twp. v. Watson, 116 Pa. 344; Bunting v. Hogsett, 139 Pa. 363; Davey v. London &

S. W. Ry., L. R. 11 Q. B. Div. 213: Louisville & Nashville R. R. v. Fleming, 14 Lea (Tenn.) 128; Francis v. St. Louis Transfer Co., 5 Mo. Ap. 7; Lewis v. Flint R. R., 54 Mich. 55; Pullman Palace Car Co. v. Barker, 4 Col. 344.

C. F. McKenna, Edw. J. McKenna with him, for appellee, cited West Mahanoy Twp. v. Watson, 116 Pa. 351; Bambrey v. B. & O. R. R. Co., 2 Monaghan, 109; Sutherland on Damages, p. 62; L. S. M. S. Ry. v. Rosenzweig, 113 Pa. 519; Davey v. London & S. W. Ry. Co., L. R. 11 Q. B. Div. 213; Lewis v. Flint Ry., 54 Mich. 55; Davis v. Garrett, 6 Bing. 716; Coppin v. Braithwaite, 8 Jur. 875; Rose v. Beatie, 2 N. & McC. 538; Brown v. R. R., 54 Wis. 342.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1893:

The first assignment, that the verdict should have been directed for the defendant, was not seriously pressed, as in fact it could not be except by totally ignoring the plaintiff's evidence.

The main stress of the defence rests upon two propositions, that the plaintiff should not have undertaken to return to Alequippa, and that having done so, she was herself responsible for all the injury she received on the way. Neither proposition can be maintained without disregarding the evidence. Indeed the real burden of appellant's complaint is that the jury rendered a wrong verdict. This however is not for us to consider. We start with the fact established by the verdict that plaintiff was wrongfully put off the train, at a regular station to be sure, but one where she was a stranger and where there was at the time no regular station house. She was in no fault herself, and being thus put in a position of embarrassment and difficulty, she was not bound to use the best judgment, but only to good faith and reasonable prudence: R. R. Co. v. Werner, 89 Pa. 59. She had been told that her ticket was not good on that train, and she had not enough money to pay the fare from that point to Pittsburgh. After consultation with her companion and asking some questions of the station agent, she started to walk back to Alequippa where she had been that morning and also the previous day, and where she must have been to some extent known, as she had that morning paid five dollars to get back her watch which she had lost the day before. For the judge to have directed the jury as matter of law that

this action was improper and negligent, and that plaintiff should have waited where she was for the next train, would have been plain error.   It was a matter for the jury and was properly left to them.

The same view applies to the other proposition.   If returning to Alequippa on foot was a natural and reasonable thing for plaintiff to do under all the circumstances, then it was a course of action which the defendant should have foreseen, and the consequences which attended the effort were not too remote to enter into the computation of damages.   The condition of the weather and the risk of getting wet by an approaching storm, were facts bearing directly on the prudence and reasonableness of plaintiff's conduct.   It is said that she walked right into the storm within ten minutes after leaving Shannopin, and that it was plain negligence not to stay where she was and take the next train.   But her evidence is that she did not know she could do that, and if the storm was imminent it might properly be regarded as the duty of the agent to inform her that she could have shelter in the box car that was serving temporarily for a station house.   There were too many elements and uncertainties in the situation as disclosed by the evidence for the court to decide and the whole question was properly left to the jury.

The evidence in regard to the effect of the occurrence on plaintiff as to taking charge of her boarding house was not an effort to show loss of profits, but loss of earning capacity in her business or occupation.   Such evidence is entirely competent. In fact it is an important part of every accident case that is tried.

Judgment affirmed.